UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

ELVIN CARBONELL and CARMEN SANTANA

Case No.: 14 CV 1548

Plaintiffs,

COMPLAINT IN CIVIL CASE

-against-

JURY TRIAL DEMANDED

THE CITY OF NEW YORK, C.O. TOM, C.O. CAMERON,
CAPTAIN MITCHELL, C.O. McQUILLA, C.O. CHESTNUT,
C.O. ALEXIS, SHIELD NO. 18730, C.O. GUY, SHIELD NO.
13262, C.O. GONZALEZ, SHIELD NO. 7933, C.O. RUIZ,
C.O. WARD and C.O JANE DOES (1-8).

Defendants.
-------------------------------------------------------------------------- X

Plaintiffs, ELVIN CARBONELL and CARMEN SANTANA, by their attorneys, ADRIAN A.
ELLIS, LLC, alleges as follows:

1. This is a civil rights action brought by plaintiffs Elvin Carbonell and Carmen Santana

   ("Plaintiffs" or "Plaintiff") for damages pursuant to 42 U.S.C. § 1983. Plaintiff was

   assaulted by the defendants whilst in the custody of the New York City Department of

   Correction (hereinafter "DOC") at the Bronx County Supreme Court, Criminal Term and

   whilst detained at Rikers Island, George R. Vierno Center ( hereinafter GRVC). The

   above captioned defendants as well as some unidentified Correction Officers assaulted

   the plaintiff Elvin Carbonell. Since the incident that occurred on November 10, 2013 at

   GRVC the plaintiff Carmen Santana has been subjected to pat frisk searches each and

   every time she visits the plaintiff, Elvin Carbonell at Rikers Island in violation of her

rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to be free from unwarranted invasions of privacy. The violation of plaintiff Santana-Carbonell rights has been at the hands of the City of New York and unidentified Correction Officers.

2. The plaintiffs now seeks redress against the City of New York, defendants C.O. Tom, C.O. Cameron, Captain Mitchell, C.O. McQuilla, C.O. Chestnut, C.O. Alexis, Shield No. 18730, C.O. Guy, Shield No. 13262, C.O. Gonzalez, Shield No. 7933, C.O. Ruiz who allowed and caused for the assaults to occur, failed to intervene when said assaults were occurring. In addition, plaintiff Carmen Santana seeks damages for the gross violation of her rights as aforementioned commencing on or around November 10, 2013 by the City of New York and C.O. Ward and C.O. Jane Does 1-8.

## JURISDICTION AND VENUE

3. This action arises under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

4. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343(a)(3-4).

5. The acts complained of occurred in the Southern District of New York and venue is properly vested in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

6. Elvin Carbonell is a resident of Bronx, New York but resided at GRVC, Rikers Island at the time he was assaulted.

7. Carmen Santana is and has been a resident of the Bronx, New York during the period where her civil rights have been violated by the defendants.

8. Defendant, the City of New York (hereinafter the "City") is a municipal corporation which owns and operates Rikers Island through the Department of Corrections (Hereinafter DOC) the City creates and implements policies, including those pertaining to the interaction of correction officers with inmates, the use of force by correction officers against inmates, the processing of visitors for inmate visits and inmate access to medical services. The DOC, through its senior officials at the central office and in each facility, promulgates and implements policies, including those with respect to visitor's access to Rikers Island for inmate visits. In addition, senior officials in the DOC are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

9. At all relevant times, Correction Officer Tom (hereinafter Tom) was an officer within the New York City Department of Corrections acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Tom is sued in his individual capacity.

10. At all relevant times, Correction Officer Cameron (hereinafter Cameron) was an officer within the New York City Department of Corrections acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment

and as such he was acting under color of State law. Defendant Cameron is sued in his individual capacity.

11. At all relevant times, Captain Mitchell (hereinafter Mitchell) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Mitchell is sued in his individual capacity.

12. At all relevant times, Correction Officer McQuilla (hereinafter McQuilla) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant McQuilla is sued in his individual capacity.

13. At all relevant times, Correction Officer Chestnut (hereinafter Chestnut) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Chestnut is sued in his individual capacity.

14. At all relevant times, Correction Officer Alexis (hereinafter Alexis) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Alexis is sued in his individual capacity.

15. At all relevant times, Correction Officer Guy (hereinafter Guy) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Guy is sued in his individual capacity.

16. At all relevant times, Correction Officer Gonzalez (hereinafter Gonzalez) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Gonzalez is sued in his individual capacity.

17. At all relevant times, Correction Officer Ruiz (hereinafter Ruiz) was an officer within the New York City Department of Corrections and assigned to the GRVC, acting in the capacity of an agent, employee of the defendant City. These actions were within the scope of his employment and as such he was acting under color of State law. Defendant Ruiz is sued in his individual capacity.

18. At all relevant times, Correction Officer Ward and John Does 1-8 (hereinafter John Does 1-8) were officers within the New York City Department of Corrections and assigned to various posts throughout the DOC, acting in their capacities as agents, employees of the defendant City. These actions were within the scope of their employment and as such they were acting under color of State law. Defendants Ward and Jane Does 1-8 are sued in their individual capacities.

## STATEMENT OF FACTS

19. On October 2, 2013 Mr. Carbonell was at the Bronx Supreme Court for a court appearance. Upon reaching the Court Mr. Carbonell was strip-searched before being escorted to a holding cell. After the search was completed Mr. Carbonell's coat was confiscated as the correction officers felt that the season did not require Mr. Carbonell to be wearing a coat. Mr. Carbonell was cold and requested that his coat be returned. He also observed that other inmates were allowed to keep their coats. In protest of this capricious treatment, Mr. Carbonell removed his jumpsuit and indicated to the correction officers that they can take his jumpsuit since they have taken his coat. Mr. Carbonell was instructed to place his hands against the wall to which he complied. Defendant Tom then struck Mr. Carbonell in the neck and the kidney area with an unidentified object causing plaintiff to crumple in pain. Mr. Carbonell was then handcuffed and removed from the cell area. Plaintiff Carbonell was taken to an unidentified area where unidentified officers attempted to shackle the plaintiff and place mittens on his hands. Plaintiff verbally refused to comply and was summarily assaulted by six to seven officers including Defendants Tom and Cameron. The defendants stomped and kicked the plaintiff in his back and neck as they forced him into the restraints. After the plaintiff was in the restraints the defendants continued to deliver blows to his midsection despite plaintiff being restrained. The plaintiff was then denied his court appearance, as the officers untruthfully reported to the Court that the plaintiff did not want to appear.

20. Plaintiff was shackled so tightly that it made it difficult for plaintiff to breathe. Plaintiff was kept in this condition for roughly four to five hours. The loss of blood circulation to the plaintiff's hands has caused numbness and loss of sensation in the plaintiff's right

hand. Plaintiff has received limited medical attention for his injuries and still suffers residual effects from the assault and the unnecessary tight shackling he was subjected to.

21. On November 10, 2013 the plaintiff whilst at GRVC in his cell had a verbal altercation with Captain Mitchell. The plaintiff was concerned that his food was being contaminated with bleach, which is a commonplace punitive measure used by Correction Officers against inmates. Captain Mitchell then stated that he's going to call the extraction team to get the plaintiff out of his cell. The plaintiff spoke to medical personnel and expressed to her that the Captain merely wanted to have him "beat up." The correction officers then commenced to gas the plaintiff's cell despite the plaintiff indicating a willingness to exit the cell. The plaintiff was told that "it's too late now" when he expressed that he would voluntarily exit his cell. When the officers opened the plaintiff's cell, plaintiff was laid down in a fetal position in anticipation of the defendants assaulting him. The plaintiff was then subjected to being kicked and punched. After being assaulted plaintiff was taken to a decontamination room via a gurney. Once in the decontamination room plaintiff was thrown off the gurney onto the floor. At this point the members of the extraction team removed some of their secure clothing at which time the plaintiff saw that Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Guy and C.O. Ruiz were the officers on the extraction team. Once the defendant's protective gearing were removed the defendants, kicked, punched and stomped the plaintiff. Some officers stated that "they had been waiting for this for a long time." Plaintiff was also struck in the head with an unidentified blunt object on the left hand side of his head. Plaintiff lost consciousness as a result of this assault. Once plaintiff regained consciousness he discovered that he was naked and under a cold shower. Defendant Alexis told the

plaintiff "clean the fucking blood of your face bitch," and threw a bar of soap at the plaintiff. After the plaintiff managed to wash the blood of his face he was given a jumpsuit to wear and handcuffed. Mr. Carbonell was taken to the clinic and due to the nature of his injuries from the clinic he was transported to Elmhurst Hospital. At Elmhurst Hospital plaintiff was diagnosed with multiple severe injuries..

22. Since the second occurrence of the second incident complained of herein against Plaintiff Carbonell, his wife, co-plaintiff, Santana-Carbonell has been subjected to an invasive pat search each and every time she visits her husband at Rikers Island. The plaintiff visits on average two times a week and since November 2013 has been subjected to a pat strip search each and every visit despite repeated protestations to the Defendant City and its municipalities, employees, agents. These unreasonable, intrusive, humiliating and embarrassing searches were all without probable cause and even reasonable suspicion and directly and proximately resulted in Plaintiffs feelings of mental distress, embarrassment, humiliation. In order to visit with her husband, the plaintiff has had to subject herself to this unconstitutional treatment which violates her First, Fourth and Fourteenth Amendment rights under the United States Constitution

23. On information and belief, visitors are not to be touched in their private areas by correction officers during these pat-frisk searches however plaintiff has been subjected to offensive, unwanted and intrusive touching during these searches. Visitors are subjected to passing through a magnometer and leaving their personal belongings in a secured area prior to visiting with inmates. In the event that there is a reasonable basis for a belief that after a visitor has cleared the magnometer that the visitor possesses contraband or a weapon said visitor could be subjected to a more intrusive search or be denied visitation with the inmate.

The more intrusive search includes a pat down. In the years that plaintiff has visited Rikers Island at no time has she been found to have possessed any contraband or weapon. In addition nether has her husband, Elvin Carbonell, been found in possession of contraband or weapons. The pat strip searching of plaintiff has been without any basis in law or rules and regulations, but is reflective of defendant's policy of ignoring the Constitutions of the United States and New York State and its own promulgated rules, regulations and directives in order to satisfy illegitimate ends.

24. On and around November 13 or November 14, 2013 the plaintiff was subjected to a pat frisk search at Rikers Island Central Visiting Building. When the plaintiff asked why she was being searched in this manner she was informed that her name had been "flagged." When asked why her name was being flagged she was told to ask her husband. On January 1, 2014 the plaintiff was at Riker's Island for a visit with her husband when she was subject, as has now become the norm, to a pat frisk search. Typically the plaintiff as part of the search would pull her brassiere to show that she was not carrying any contraband in her bra. On this occasion the officer conducting the search placed her fingers under the plaintiff's brassiere thereby touching the plaintiff's breast.

25. On January 26, 2014 between 9:00 AM and 10:00 A.M. plaintiff Santana presented to Rikers Island Central Visiting Building for a visit. During the now customary pat frisk search Correction Officer Ward placed her fingers in the plaintiff's pants waist and ran her fingers around the plaintiff's waist. The officer then ran her finger vertically along the plaintiff's buttocks. The officer then proceeded to cup the plaintiff's vagina with her hand. When the plaintiff remarked "you're not supposed to do that" the officer responded "one more word

and I'm going to restrict you for 45 days." The officer also placed her hands under the plaintiff's shirt, pulled at her bra and touched the plaintiff's breast.

26. On January 29, 2014 at around 1:00 PM to 3:00 PM the plaintiff was at Rikers Island Central Visiting Building for a visit when during a pat frisk search an officer instructed for her to lift up her shirt. After complying the plaintiff was told to lift up her brassiere to her shoulders. Plaintiff once again complied thereby exposing her breasts. The officer told the plaintiff to put her shirt down but leave her brassiere up, the officer then proceeded to fondle the plaintiff's breasts.

27. On February 1, 2014 whilst at GRVC the plaintiff was instructed to submit to a pat frisk search. The officer required the plaintiff to pull her pants down below her crotch. The officer then grabbed the waistband of plaintiff's underwear and pulled it from plaintiff's body in both the rear and front of the plaintiff's underwear. The officer also ran her fingers under the bottom of plaintiff's brassiere thereby touching the plaintiff's breasts.

28. On February 19, 2014 whilst at Rikers Island Central Visiting Building the plaintiff was instructed to submit to a pat frisk search. Whilst being escorted to the area designated for the search defendant Ward intervened and told the escorting officer that "she got it." Defendant Ward then instructed the plaintiff to unbuckle her pants. The plaintiff complied and was then told to lower her pants. Plaintiff lowered her pants until her underwear was fully exposed. Defendant Ward then cupped the plaintiff's vagina and rubbed her fingers along the plaintiff's vagina. Plaintiff was then instructed to lift up her shirt, which she did. Defendant Ward then rubbed her fingers under the plaintiff's brassiere simultaneously touching her breasts.

29. On and around December 31, 2013 the plaintiff lodged a complaint with the Board of Correction to lodge a complaint. However, the pat frisk searches just became more intrusive and offensive and have continued unabated. Prior to each search the plaintiff is required to execute a form consenting to the search. Refusal to execute this form as explained to plaintiff by defendants can result in denial of visitation. Plaintiff Elvin Carbonell suffers from Psycho-Affective disorder hence the reason the plaintiff Santana has continued to visit him, or otherwise she would not continue to accept this abuse.

30. This Court also has jurisdiction over plaintiff's state law claims, pursuant to its pendent or supplemental jurisdiction as codified in 28 U.S.C. § 1367.

On December 2, 2013, within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e as it relates to the incidents complained of by plaintiff Carbonell. On February 11, 2014 within ninety days after the claims alleged in this complaint arose, a verified Notice of Claim was duly served upon the Comptroller of the City of New York pursuant to General Municipal Law § 50-e as it relates to the incidents complained of by plaintiff Santana.

31. At least thirty days have elapsed since the service of the Notices of Claim, and adjustment or payment of the claims has been neglected or refused by Defendant City of New York. This action is being commenced within one year and ninety days after the happening of the events on which these claims are based.

> FIRST CLAIM FOR RELIEF PURSUANT TO 42 U.S.C §1983 AGAINST
> DEFENDANTS CITY OF NEW YORK, TOM, CAMERON, MITCHELL,
> MCQUILLA, GONZALEZ, CHESTNUT, ALEXIS AND RUIZ

32. Plaintiff Carbonell repeats and realigns each and every allegation as if fully set forth herein.

33. By reason of the foregoing and by the use of unnecessary and excessive force against plaintiff, thereby depriving plaintiff of his rights, privileges, protections and immunities guaranteed to him pursuant to 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution.

34. Defendants Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz, C.O. Tom and C.O. Cameron acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as New York City Department of Correction officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law and an abuse of their powers. The defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

35. As a direct and proximate result of the unnecessary, excessive and improper use of force the plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM FOR RELIEF PURSUANT TO 42 U.S.C § 1983 AGAINST DEFENDANT CITY OF NEW YORK

36. Plaintiff Carbonell repeats and realigns each and every allegation as if fully set forth herein.

37. Defendant City, through the DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of officer

violence against inmates. This widespread correction officer abuse of prisoners constituted a municipal policy, practice and custom that led to plaintiff's assault.

38. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected on November 6, 2012 to the unnecessary and excessive use of force, defendant City has deprived plaintiff of rights privileges, protections and immunities guaranteed to him pursuant to 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from excessive, unnecessary and improper use of force.

39. As a direct and proximate result of the misconduct and abuse of authority the plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM FOR RELIEF PURSUANT TO 42 U.S.C § 1985 AGAINST DEFENDANTS CITY OF NEW YORK AND JOHN DOES 1-8

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1-39.

41. Defendants, by illegally strip, pat searching plaintiff Santana, violated her rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

## FOURTH CLAIM FOR RELIEF PURSUANT TO 42 U.S.C. §1983 AGAINST DEFENDANTS CITY OF NEW YORK, TOM, CAMERON,MITCHELL, MCQUILLA,GONZALEZ, CHESTNUT, ALEXIS AND RUIZ

42. Plaintiff repeats and realigns each and every allegation as if fully set forth herein.

43. The incidents of October 2, 2013 and November 10, 2013 where Correction Officers
    assault inmates was and is widespread and tolerated by and known to the City.
    The City has consistently failed to discipline, train and supervise its officers regarding the
    use of force against inmates by refusing to take corrective action against officers.

44. The City was aware that correction officers use unauthorized force against inmates and
    that such practice presented an imminent harm to the plaintiff.

45. Additionally, the City has consistently failed to properly investigate incidents of assault
    thereby implicitly declaring the City's sanction of such incidents.

46. The above described policies and customs and failures to train, supervise and discipline
    clearly illustrates the deliberate indifference on the part of the City to the constitutional
    rights of person within New York City and was the cause of the violations of plaintiff's
    rights.

## FIFTH CLAIM FOR RELIEF PURSUANT TO 42 U.S.C. §1983 AGAINST DEFENDANTS CITY OF NEW YORK AND GUY

47. Plaintiff repeats and realigns each and every allegation as if fully set forth herein.

48. The incident on November 10, 2013 where officer Guy fails to intervene or protect an
    inmate who was being assaulted by other officers in order to protect correction officers
    who assault inmates was and is widespread and tolerated by and known to the City.
    Officer Guy on the date in question failed to intervene or protect plaintiff Elvin Carbonell
    from the assault despite his duty and obligation as an officer of the Department of
    Corrections. Additionally, officer Guy was complicit in covering up the truth by
    completing false reports of the incident at question.

49. The above described policies and customs and failures to train, supervise and discipline clearly illustrates the deliberate indifference on the part of the City to the constitutional rights of persons within New York City and was the cause of the violations of plaintiff's rights.

### SIXTH CLAIM FOR RELIEF PURSUANT TO 42 U.S.C §1983 AGAINST DEFENDANTS CITY OF NEW YORK, TOM, CAMERON, MITCHELL, MCQUILLA, GONZALEZ, CHESTNUT, ALEXIS AND RUIZ

50. Plaintiff repeats and realigns each and every allegation as if fully set forth herein.

51. By reason of the foregoing and by the use of unnecessary and excessive force against the plaintiff, the defendants deprived plaintiff of his rights, privileges, protections and immunities guaranteed to him pursuant to 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to his safety in violation of the Eighth and Fourteenth Amendments to the Constitution and 42 U.S.C. 1983 .

52. Defendants Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz, C.O. Tom and C.O. Cameron acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment as New York City Department of Correction officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law and an abuse of their powers. The defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

53. As a direct and proximate result of the unnecessary and excessive use of force and abuse of authority the plaintiff sustained the damages hereinbefore alleged.

### SEVENTH CLAIM FOR RELIEF PURSUANT TO 42 U.S.C § 1983 AGAINST DEFENDANTS CITY OF NEW YORK, TOM, CAMERON, MITCHELL, MCQUILLA, GONZALEZ, CHESTNUT, ALEXIS AND RUIZ

54. Plaintiff repeats and realigns each and every allegation as if fully set forth herein.

55. Defendant City, through the DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of officer violence against inmates. This widespread correction officer abuse of prisoners constituted a municipal policy, practice and custom that led to plaintiff's assault.

56. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected on March 24, 2013 to a violent assault, defendant City has deprived plaintiff of rights privileges, protections and immunities guaranteed to him pursuant to 42 U.S.C. § 1983, including but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from deliberate indifference to safety.

57. As a direct and proximate result of the misconduct and abuse of authority the plaintiff sustained the damages hereinbefore alleged.

### EIGHTH CLAIM FOR RELIEF PURSUANT TO U.S.C. § 1983 AGAINST DEFENDANTS CITY OF NEW YORK .

58. Plaintiff Santana repeats and realleges the allegations contained in paragraphs. 1-57.

59. Upon information and belief, the acts complained of herein are a direct and proximate result of the failure of the City of New York and DOC properly to select, train, supervise, promote and discipline correction officers and supervisory correction officers.

60. Upon information and belief, the failure of the City of New York and DOC properly to select, train, supervise, promote and discipline correction officers and supervisory correction

officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

61. The official policies, practices and customs of the City of New York and DOC, alleged herein violated plaintiff Santana-Carbonell rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

## NINTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK

62. Plaintiff Santana repeats and re-alleges the allegations contained in paragraphs 1-61.

63. Upon information and belief, the acts complained of herein are a direct and proximate result of the failure of the City of New York and DOC properly to select, train, supervise, promote and discipline correction officers and supervisory correction officers.

64. Upon information and belief, the failure of the City of New York and DOC properly to select, train, supervise, promote and discipline correction officers and supervisory correction officers constitutes gross and deliberate indifference to unconstitutional conduct by those officers.

65. The official policies, practices and customs of the City of New York and DOC, alleged herein violated plaintiff Santana's rights guaranteed by 42 U.S.C. § 1983, the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, and Article I, §§ 1, 5, 6, 8, 11 and 12 of the Constitution of the State of New York.

## TENTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK, C.O. WARD AND JANE DOES 1-8

66. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-65.

67. The conduct toward plaintiff Santana alleged herein constituted an illegal search and seizure, sexual abuse, willful and malicious infliction of severe physical, mental and emotional distress, and employee negligence.

68. The conduct toward plaintiff Santana alleged herein subjected her to trauma, shock, debasement, fright, fear, humiliation, embarrassment, and psychological and emotional injury, trauma, pain and suffering.

## ELEVENTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK, C.O. WARD and JANE DOES 1-8

69. Plaintiff Santana repeats and realleges each and every allegation as if fully set forth herein.

70. By reason of the foregoing, and by subjecting plaintiff to a pat, strip search that was gratuitous, excessive, unnecessary, sadistic, punitive in nature, designed to humiliate and embarrass plaintiff, designed to deter plaintiff from visiting her husband and designed to titillate and amuse Department staff, and by failing to prevent the strip-search from occurring the individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from gratuitous and unlawful invasions of her privacy.

71. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

72. Defendants City of New York, Ward and Jane Does 1-8 knew that the pattern of violation of privacy rights described above existed at Rikers Island prior to and including the time of the violations of plaintiff's rights. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's violation of her rights, and the failure of these defendants to take remedial action despite the fact that the misuse of pat strip searches at Rikers Island had been persistently brought to their attention, constitutes deliberate indifference to the rights of visitors, including plaintiff.

## TWELFTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK, TOM and CAMERON

73. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-71.

74. On October 2, 2013 without any just cause or provocation, Officers Tom and Cameron alongside other unidentified officers wilfully, wantonly, maliciously, and recklessly assaulted, beat, pushed, punched, shoved, kicked, cuffed and stomped the plaintiff, causing the injuries alleged herein.

75. At the time of the incident, defendants Tom and Cameron were employees and servants of the defendant The City of New York, and were acting as the defendants' agent in carrying out the acts complained of herein. The defendant the City of New York was exercising direct control over defendants Tom and Cameron.

76. Furthermore, at all relevant times, defendants Tom and Cameron were acting in furtherance of the defendants' interests and were acting within the scope of their employment and authority as vested in them by the defendant, The City of New York.

77. The defendants are therefore liable for the acts of defendants Tom and Cameron based on the doctrine of respondeat superior.

78. As a result of the defendants' conduct, plaintiff sustained serious personal injuries that are permanent in nature.

79. As a result of the foregoing, plaintiff has been damaged by the defendants in an amount to be determined at trial

80. Plaintiff also claims punitive damages against the defendants in the amount of $2,000,000.00.

## THIRTEENTH CLAIM FOR RELIEF AGAINST THE CITY OF NEW YORK, MITCHELL, MCQUILLA, GONZALEZ, CHESTNUT, ALEXIS AND RUIZ

81. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1-80.

82. On November 10, 2013 without any just cause or provocation, Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz wilfully, wantonly, maliciously, and recklessly assaulted, beat, pushed, punched, shoved, kicked and stomped the plaintiff, causing the injuries alleged herein.

83. At the time of the incident, defendants Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz were employees and servants of the defendant The City of New York, and were acting as the defendants' agent in carrying out the acts complained of herein. The defendants and all of them were exercising direct control over Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz activities.

84. Furthermore, at all relevant times, defendants Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz were acting in furtherance of the defendant the City of New York's interests and were acting within the scope of their employment and authority as vested in them by the defendant, The City of New York.

85. The defendants are therefore liable for the acts of defendants Captain Mitchell, C.O. McQuilla, C.O. Gonzalez, C.O. Chestnut, C.O. Alexis, C.O. Ruiz based on the doctrine of respondeat superior.

86. As a result of the defendants' conduct, plaintiff sustained serious personal injuries that are permanent in nature.

87. As a result of the foregoing, plaintiff has been damaged by the defendants in an amount to be determined at trial

88. Plaintiff also claims punitive damages against the defendants in the amount of $10,000,000.00.

### PRAYERS FOR RELIEF

WHEREFORE, plaintiffs respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all the defendants jointly and severally;

(b) Punitive damages against the individual Defendants, jointly and severally;

(c) Reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1988; and

(d) Such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
February 28, 2014

Adrian A. Ellis, LLC
By: Adrian A. Ellis, Esq. (5276)
26 Court Street, suite 1600
Brooklyn, New York 11242